UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:21-cv-11334-GAO

ANALOG TECHNOLOGIES, INC. and DR. GANG LIU,
Plaintiffs,

v.

ANALOG DEVICES, INC.,
Defendant.

<u>OPINION AND ORDER</u>
September 8, 2023

O'TOOLE, D.J.

The plaintiffs, Analog Technologies, Inc. ("ATI") and its principal, Dr. Gang Liu, have brought suit against Analog Devices, Inc. ("ADI"), asserting nine counts[1] alleging ADI's breach of a 2015 licensing and development agreement ("2015 License Agreement") and misappropriation of trade secrets. The Amended Complaint alleges that the 2015 License Agreement remains in effect (Counts I–II); that ADI breached the agreement (Count III); in the alternative, that the agreement is terminated and ADI is accordingly misappropriating the plaintiffs' trade secrets (Counts IV–VI, VIII); and that ADI fraudulently induced the plaintiffs to enter into the agreement (Counts IX–X). Pending before the Court are ADI's Motion for Judgment on the Pleadings as to Counts I–III (dkt. no. 74), ADI's Motion to Dismiss Counts IV–VI and VIII–X (dkt. no. 76), and the plaintiffs' Motion for Partial Summary Judgment as to Counts I and II (dkt. no. 87). The Court heard oral argument on August 3, 2023. For the following reasons, ADI's Motion for Judgment on the Pleadings as to Counts I–III (dkt. no. 74) and ADI's Motion to

---

[1] The Amended Complaint omits an enumerated Count VII (dkt. no. 72).

Dismiss Counts IV–VI and VIII–X (dkt. no. 76) are GRANTED, and the plaintiffs' Motion for

Partial Summary Judgment as to Counts I and II (dkt. no. 87) is DENIED.

## I.      Factual Background

### A.      The 2000 License Agreement

In November 2000, ATI and ADI entered into a license and development agreement (the

"2000 License Agreement") under which ATI exclusively licensed ADI to manufacture and sell

products utilizing ATI's intellectual property. (2000 License Agreement, Ex. A § 4 (dkt. no. 72-

1).)

> The agreement's confidentiality provision states:
>
> (f) The parties agree that any information, technical data or know-how which is furnished to the other in written or tangible form by either party in connection with this Agreement and which is clearly marked as "Proprietary Information" or "Confidential" will be maintained by the receiving party in confidence. The obligations of confidentiality and/or non-disclosure set forth in this Section shall survive the expiration or termination of this Agreement for a period of five (5) years from the date of expiry or termination.

(Id. § 5(f).) Under the "sunset clause," the term of the agreement is "five (5) years from the Product

silicon release date pursuant to the schedule in EXHIBIT C." (Id. § 7(a).) Exhibit C lists the

"Silicon release" date as "12/20/01."

As part of the agreement, ADI would pay ATI a royalty fee for the use of the intellectual

property. In or about 2013, ADI stopped paying royalties stipulated under the 2000 License

Agreement to ATI.

### B.      The 2015 License Agreement

In 2015, the plaintiffs and ADI executed a new agreement that replaced the 2000 License

Agreement. Under the new agreement, as under the prior one, the plaintiffs exclusively licensed

ATI's intellectual property to ADI. The exclusive license provided:

> Gang Liu and ATI each grant to ADI an exclusive worldwide license to . . . any and all hardware, software, designs, documentation, know-how, or other materials provided by Gang Liu and/or ATI to ADI ("Development Materials"), any products incorporating any part of the Development Materials, including but not limited to the ADN8830, ADN8831, AND8833, and AND8834 ("Products"), and any patent, copyright, mask work, trade secret, know how, or other proprietary rights associated with or relating to such Development Materials or Products ("Intellectual Property") including, but not limited to US Patent No. 6,486,643 ["'643 patent"].

(2015 License Agreement, Ex. B § 2 (dkt. no. 72-2).) The 2015 agreement provided that "[i]n order to maintain the exclusive license in this Agreement, ADI must continue the royalty payments after US Patent No. 6,486,643 expires." (Id. § 3.)

C.      Subsequent Events

Section 7(b) of the 2015 License Agreement gave ADI the option to terminate that agreement upon ninety days' notice. The relevant section provides:

> This Agreement shall remain in force until terminated by a party as provided below:
>
> . . .
>
> (b) by ADI for any reason upon ninety (90) days written notice to ATI, if ATI or Gang Liu is in breach of a term or condition of this Agreement and fails to cure such breach within ninety (90) days after written notice from ADI then ADI can terminate section 3 of this Agreement while the rest of the Agreement remains in force[.]

(Id. § 7.)

By a letter dated May 7, 2021, ADI notified the plaintiffs that it was electing to terminate the 2015 License Agreement pursuant to the quoted section. The plaintiffs responded that the termination was invalid because ADI improperly, and thus ineffectively, terminated the 2015 License Agreement. ADI replied, reiterating that it had terminated the agreement in accordance with Section 7(b).[2] This suit followed.

---

[2] ADI's reply stated: "[ADI]'s payment obligations to ATI will end 90 days from the date of the original letter . . . in other words, August 7, 2021." (July 13, 2021 ADI Reply, Ex. E at 2 (dkt. no.

## II.   Discussion

### A.   ADI's Motion for Judgment on the Pleadings as to Counts I–III (dkt. no. 74)

ADI has moved for judgment on the pleadings as to Counts I–III of the Amended Complaint, the contract claims. Counts I and II seek a declaratory judgment that the 2015 License Agreement is still in force and Count III asserts a substantive claim for breach of contract.

The Court reviews a motion for judgment on the pleadings under substantially the same standard as that for a motion to dismiss for failure to state a claim under Rule 12(b)(6), except that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54–55 (1st Cir. 2006).

The contract claims center around whether ADI properly terminated the agreement in accordance with Section 7(b) of the 2015 License Agreement. The parties' interpretations of the termination provision differ. The language of Section 7(b) is awkward. ADI argues that the provision provides two termination rights pursuant to two separate clauses, one preceding the comma in the first line, and a second and distinct one after the comma. ADI's interpretation is that it had the unrestricted right under the first clause to terminate the entire agreement "for any reason" so long as it provided ninety days' written notice to ATI, and a second, more limited right under the second clause to terminate only a specific provision of the agreement, namely Section 3. That is, if ATI or Dr. Liu were in a specified breach and failed to cure that breach within ninety days, then ADI could elect to terminate only Section 3 of the agreement (the royalty obligation) while retaining its rights in the rest of the agreement (including ADI's license to the '643 patent). On the other hand, the plaintiffs argue that Section 7(b) provides only one termination right, expressed in

---

72-5).) The original letter had identified the effective termination date as "August 27, 2021." (See ADI's May 7, 2021 Notice to Terminate, Ex. C (dkt. no. 72-3).) Both dates fulfill the requirement of ninety days' notice, so the discrepancy is not significant.

the portion of Section 7(b) that follows the comma in the first line. According to the plaintiffs'
position, ADI had the right to terminate only if the plaintiffs were to breach the agreement and
failed to remedy the breach after notice. ADI has the better argument.

A contractual choice-of-law provision calls for Massachusetts law to govern generally and
this interpretive question in particular. "It is hornbook law that an interpretation which gives effect
to all the terms of a contract is preferable to one that harps on isolated provisions, heedless of
context." Blackie v. Maine, 75 F.3d 716, 722 (1st Cir. 1996) (citing Smart v. Gillette Co. Long-
Term Disability Plan, 70 F.3d 173, 179 (1st Cir. 1995)). Courts, therefore, "strive for a reasonable
interpretation of the Agreement as a whole, while avoiding constructions that would render any
term within it meaningless." PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 16 (1st Cir. 2010).

Only ADI's interpretation gives meaning to both clauses in Section 7(b). Although
awkwardly (and ungrammatically) expressed, it appears the parties intended Section 7(b) to
provide for two distinct circumstances. The interpretive problem would likely not exist if the
scrivener had inserted a semi-colon between the phrases rather than the comma. In contrast, the
plaintiffs' interpretation proposes a facially self-contradictory termination provision providing
ADI is allowed to terminate the whole contract "for any reason" and yet only "if ATI or Dr. Gang
Liu is in breach." In effect, the plaintiffs' interpretation improperly reads the first termination
clause ("by ADI for any reason upon ninety (90) days written notice to ATI") out of the agreement
entirely and interprets the agreement as if only the second termination clause were operative. See
Farmers Ins. Exchange v. RNK, Inc., 632 F.3d 777, 785 (1st Cir. 2011) ("no part of the contract is
to be disregarded") (quoting Starr v. Fordham, 648 N.E.2d 1261, 1269 (Mass. 1995)).

Because ADI gave ninety-day written notice set forth in the first clause of Section 7(b), ADI properly terminated the 2015 License Agreement. Therefore, ADI's Motion for Judgment on the Pleadings as to Counts I–III (dkt. no. 74) is GRANTED.

> B.   ADI's Motion to Dismiss Counts IV–VI and VIII–X (dkt. no. 76)

ADI also moves to dismiss Counts IV–VI and VIII–X of the Amended Complaint. Counts IV–VI and VIII–X allege, alternatively to Counts I–III of the Amended Complaint, that the 2015 License Agreement is in fact terminated, that ADI misappropriated the plaintiffs' trade secrets, and that ADI fraudulently induced the plaintiffs to enter into the 2015 License Agreement.

When considering a motion to dismiss, the Court must accept as true all well-pleaded facts and draw all reasonable inferences in favor of the plaintiff. Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999). Dismissal is only appropriate if the complaint, so considered, fails to allege a "plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007).

The plausibility standard is not met unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels [the Court] to draw on [its] judicial experience and common sense." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (quotation marks omitted).

When a plaintiff alleges fraud, the plaintiff must meet the "heightened pleading standard" of Federal Rule of Civil Procedure 9(b). N. Am. Catholic Educ. Programming Found., Inc. v.

Cardinale, 567 F.3d 8, 13 (1st Cir. 2009). Rule 9(b) provides: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Thus, the standard "is satisfied by an averment 'of the who, what, where, and when of the allegedly false or fraudulent representation.'" Rodi v. S. New England Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004) (quoting Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004)). "The other elements of fraud, such as intent and knowledge may be averred in general terms." Id. The complaint, however, must "also identify[] the basis for inferring scienter" by setting forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." N. Am. Catholic, 567 F.3d at 13 (quotations and citations omitted).

Counts IV–V seek a declaratory judgment that the 2015 License Agreement was in fact terminated. Because ADI agrees with this, Counts IV–V are dismissed for lacking an "actual controversy" as required under 28 U.S.C. § 2201(a).

In Counts VI and VIII, the plaintiffs allege that ADI misappropriated its trade secrets, in violation of 18 U.S.C. § 1836(b) and Massachusetts General Laws ch. 93, §§ 42 and 42A–42G. The plaintiffs identify their alleged trade secrets as development materials they provided "in late 2000 and on through 2004, under the confidentiality provisions of the 2000 License and Development Agreement." (Am. Compl. ¶ 59.)

A party may bring a misappropriation of trade secret claim under the Defend Trade Secrets Act ("DTSA") so long as the alleged secrets relate to "a product or service used in or intended for use in, interstate or foreign commerce" and so long as the secret's owner has (i) "taken reasonable measures to keep such information secret," and (ii) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable

through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. §§ 1836(b)(1), 1839(3)(A)–(B). The DTSA further defines misappropriation as "disclosure or use of the trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(II). "Massachusetts trade secret law is nearly equivalent to the DTSA." Allscripts Healthcare LLC v. Dr/Decision Res., LLC, 386 F. Supp. 3d 89, 94 (D. Mass. 2019).

ADI argues that the plaintiffs' trade secret misappropriation claims fail because the allegations rely on a confidentiality provision in the 2000 License Agreement that expired years before the alleged "misappropriation" in 2021. In particular, the confidentiality provision contained an automatic sunset clause whereby the obligations of confidentiality only survived for five years after the expiration of the 2000 agreement. Therefore, ADI argues, the plaintiffs have not alleged the continued existence of any previously existing trade secret.

In the Amended Complaint, the plaintiffs allege that they provided confidential information to ADI between the years 2000 and 2004, (Am. Compl. ¶¶ 59, 98.), and further that ADI misappropriated that confidential information in 2021. (Id. ¶¶ 89, 99.) Yet, the confidentiality obligations that attached to any such information between 2000 and 2004 had a defined sunset clause by which any confidentiality expired over a decade before the alleged misappropriation. By the terms of the sunset clause there were no trade secrets under the 2000 License Agreement still in existence to have been misappropriated in 2021. See, e.g., Structured Capital Sols., LLC v. Commerzbank AG, 177 F. Supp. 3d 816, 835 (S.D.N.Y. 2016) (finding that the trade secret misappropriation claim "fails as a matter of law" because the information was disclosed "pursuant

to a nondisclosure agreement that had long since expired"); <u>DB Riley, Inc. v. AB Eng'g Corp.</u>, 977 F. Supp. 84, 91 (D. Mass. 1997) (holding that the plaintiff had not met its burden of proving that it had taken reasonable steps to preserve the secrecy of its alleged trade secrets because its confidentiality obligation expired ten years after the contract's expiration). Accordingly, Counts VI and VIII are dismissed.

In Counts IX–X, the plaintiffs allege that ADI stopped paying royalties under the 2000 License Agreement in order to fraudulently induce the plaintiffs to enter into a new licensing agreement with terms more favorable to ADI. ADI argues that the fraud claims lack the particularly required by Rule 9(b).

In the Amended Complaint, each of the fraud claims alleged contains only one paragraph describing the fraud:

> [The plaintiffs] believe[] and therefore aver[] that [they] w[ere] fraudulently induced in or about 2015 to enter into the 2015 License Agreement and learned of that fraud in or about May of 2021 upon receipt of the May 7, 2021 Notice of Intent to Terminate Letter.

(Am. Compl. ¶¶ 107, 111 (dkt. no. 72).) Because the plaintiffs' fraud claims lack any particulars of the alleged fraud as required by Rule 9(b), Counts IX–X are dismissed.

## III.   Conclusion

For the foregoing reasons, ADI's Motion for Judgment on the Pleadings as to Counts I–III (dkt. no. 74) and ADI's Motion to Dismiss Counts IV–VI and VIII–X (dkt. no. 76) are GRANTED. The plaintiffs' Motion for Partial Summary Judgment as to Counts I and II (dkt. no. 87) is DENIED as MOOT in light of the rulings contained in this opinion.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge